# No. 22-413

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

Mabior Jok,

       Plaintiff - Appellee,

v.

City of Burlington, Vermont, Brandon del Pozo, individually and in his official capacity as Chief of Police for the City of Burlington, Vermont, Joseph Corrow, individually and in his official capacity as a Police Officer for the City of Burlington, Vermont,

       Defendants - Appellants,


Jason Bellavance, individually and in his official capacity as a Police Officer for the City of Burlington, Vermont, Janine Wright, individually and in her official capacity as a Police Officer for the City of Burlington, Vermont,

       Defendants.


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

**FINAL FORM BRIEF
FOR DEFENDANTS-APPELLANTS JOSEPH CORROW, CITY OF
BURLINGTON, VERMONT and BRANDON DEL POZO**

Pietro J. Lynn, Esq.
Lynn, Lynn, Blackman & Manitsky, P.C.
76 St. Paul Street, Suite 400
Burlington, VT 05402
Telephone: (802) 860-1500
Email: plynn@lynnlawvt.com
*Attorneys for Defendants/Appellants Joseph Corrow,*
*City of Burlington, Vermont and Brandon del Pozzo*

## I.  <u>Disclosure Statement</u>

Since there is no non-governmental corporation party to this proceeding, and since this is not a criminal case or a bankruptcy case, the disclosure requirements of Fed. R. App. P. 26.1 are not applicable.

# TABLE OF CONTENTS

Disclosure Statement.............................................................................. i

Table of Authorities ............................................................................. iii

Jurisdictional Statement ........................................................................ 1

Statement of Issues............................................................................... 2

Statement of the Case............................................................................ 2

Summary of the Argument..................................................................... 7

Argument............................................................................................... 8

1.    The District Court Erred In Determining Officer Corrow
       Violated Jok's Fourth Amendment Rights. ........................................ 9

2.    The District Court Erred In Determining Officer Corrow
       Violated a 'Clearly Established' Constitutional Right ...................... 14

Conclusion ........................................................................................... 18

Certificate of Compliance .................................................................... 19

Certificate of Service ........................................................................... 20

# TABLE OF AUTHORITIES

## **Cases**

*Ashcroft v. al-Kidd*
    563 U.S. 731 (2011)................................................................. 14, 15, 17

*Bettis v. Bean,*
    No. 5:14-CV-113, 2015 WL 5725625 (D. Vt. Sept. 29, 2015)
    .................................................................................................... 10, 13

*Bizzarro v. Miranda,*
    394 F.3d 82 (2d Cir. 2005) ............................................................ 1, 2

*Brayshaw v. City of Burlington,*
    No. 5:13-CV-253, 2015 WL 1523019 (D. Vt. Apr. 3, 2015)............. 10

*Bryan v. MacPherson,*
    630 F.3d 805 (9th Cir.2010) ............................................................. 13

*Graham v. Connor,*
    490 U.S. 386 (1989)................................................................ 9, 10, 13

*Jones v. Parmley,*
    465 F.3d 46 (2d Cir. 2006) ............................................................... 17

*Kisela v. Hughes,*
    138 S. Ct. 1148 (2018)................................................................ 15, 16

*Mickle v. Morin,*
    297 F.3d 114  (2d Cir. 2002) ......................................................... 9, 10

*Savino v. City of New York,*
    331 F.3d 63 (2d Cir.2003) ............................................................... 17

*Saucier v. Katz,*
 533 U.S. 194 (2001)..............................................................8, 9

*Taravella v. Town of Wolcott,*
 599 F.3d 129 (2d Cir. 2010) .................................................9

*Thomas v. Roach,*
 165 F.3d 137 (2d Cir. 1999) .................................................8

*Tracy v. Freshwater,*
 623 F.3d 90 (2d Cir. 2010) ...................................................9

**<u>Statutes</u>**

28 U.S.C. § 1331 ........................................................................1

28 U.S.C. § 1343(a) ...................................................................1

## II. **Jurisdictional Statement**

### a.  Basis for District Court's Jurisdiction

The District Court had jurisdiction over this action pursuant to 28 U.S.C. §
1331, as this action involves a federal question.  *See id.* (providing for federal
question jurisdiction).  The District Court also had jurisdiction over this action
pursuant to 28 U.S.C. § 1343(a), as this action involves a claim of a "deprivation,
under color of any State law, statute, ordinance, regulation, custom or usage, of
any right, privilege or immunity secured by the Constitution of the United States or
by any Act of Congress providing for equal rights of citizens or of all persons
within the jurisdiction of the United States."  *Id.*

### b.  Basis for Court of Appeals' Jurisdiction

The Court of Appeals has jurisdiction over this appeal because the issue on
appeal is the District Court's denial of Appellant Officer Corrow's Motion for
Summary Judgment on the basis of qualified immunity.  The denial of a motion for
summary judgment on the basis of qualified immunity, despite being in
interlocutory order, is immediately appealable.  *See*, *e.g.*, *Bizzarro v. Miranda*, 394
F.3d 82, 86 (2d Cir. 2005) ("We have jurisdiction to review the denial of a motion
for summary judgment on the basis of qualified immunity if the defendant is
entitled to immunity as a matter of law on the plaintiff's version of the facts.").

c. Filing Dates Establishing Timeliness of Appeal

The District Court entered its Opinion and Order denying Officer Corrow's Motion for Summary Judgment on February 14, 2022. *See* JA at 1085-1138. Appellants' Notice of Appeal was filed on March 1, 2022. *See id.* at 1139. Accordingly, Appellant's appeal is timely.

d. Assertion Appeal Is From Final Order or Information Establishing Court of Appeals' Jurisdiction

While the Opinion and Order from which Appellants appeal is interlocutory, the Court of Appeals has jurisdiction over this matter, as the denial of a motion for summary judgment on the basis of qualified immunity, despite being an interlocutory order, is immediately appealable. *See, e.g.*, *Bizzarro*, 394 F.3d at 86.

## III.     **Statement of Issues Presented for Review**

Whether the District Court erred in denying Defendant-Appellant Officer Corrow's Motion for Summary Judgment on qualified immunity grounds.

## IV.     **Statement of Case**

A. Concise Statement of the Case

Plaintiff-Appellee, Mabior Jok ("Jok"), first filed this action in May 2019. *See* JA at 1-11. Jok subsequently filed a Second Amended Complaint in August 2020. *See id.* 12-27. Jok alleges, *inter alia*, that Defendant-Appellant Office Joseph Corrow, a member of the City of Burlington Police Department, used "excessive force and physical brutality" against Jok in the early-morning hours of

2

September 8, 2018, which violated Jok's Fourth Amendment right to be free from unreasonable seizures. *See id.* at 14, 17-18.

Officer Corrow moved for summary judgment on Jok's claim on the basis of qualified immunity in June 2021. *See* JA at 28-84. The District Court heard oral argument on Officer Corrow's motion on November 29, 2021. JA at 1084. On February 14, 2022, Judge William K. Sessions, III issued an Opinion and Order finding Officer Corrow was not entitled to qualified immunity and denying Officer Corrow's Motion for Summary Judgment on that basis. *See* JA at 1103-1108. Officer Corrow respectfully submits the District Court erred in doing so.

B. <u>Facts Relevant to Issue Presented for Review</u>

Plaintiff-Appellee, Mabior Jok was born into a life of violence. *See* JA at 1086; JA at 71-72, ¶¶ 2-7. Jok "was forced into combat as a child soldier, suffered a lack of basic food necessities as a refugee, and watched his closest family members, including his father, die." JA at 1086. As a result of the horrors of his youth, Jok suffers from post-traumatic stress disorder ("PTSD"). *Id.* Jok does not engage in treatment, or take medication, for his PTSD; instead, Jok "self-medicates with alcohol." *Id.*; JA at 72, ¶¶ 8-10.

During his time in Burlington, Vermont prior to this incident, Jok engaged in a degree of criminal and violent behavior that made him known to members of the Burlington Police Department. *See* JA at 73, ¶ 16 (citing deposition testimony).

3

Jok interacted with the Burlington Police Department frequently enough to become familiar with members of the Burlington Police Department himself. JA at 74, ¶ 18 (citing deposition testimony). Tellingly, Jok knew who Officer Joseph Corrow was prior to the September 8, 2018 incident that is the subject of this litigation. *Id.*

On the evening of September 7, Jok went to a bar in Burlington, R.J.'s, to drink beer. JA at 74, ¶ 19 (citing deposition testimony). Jok does not remember how many beers he consumed while at R.J.'s. JA at 74, ¶ 20 (quoting deposition testimony). In the early-morning hours of September 8, Jok went outside to smoke a cigarette. JA at 75, ¶ 22 (citing deposition testimony). Jok's last memory from the early-morning hours of September 8 is lighting a cigarette; he has no recollection of what happened after that. JA at 75, ¶ 24 (quoting deposition testimony).

While outside R.J.'s, Jok involved himself with a group he described as "kinda loud." JA at 75, ¶ 23 (quoting deposition testimony). The District Court described the conversation among the group as "tense." JA at 1086-87. Testimony from other witnesses present that night – describing members of the group as "pissed off," "yelling," "[very] drunk," and "threatening to shoot one another" – confirms the group was, at the very least, tense. JA at 75-76, ¶¶ 25-27 (quoting deposition testimony).

The tension in the group escalated when Jok punched another member of the group in the face. JA at 77, ¶ 32 (quoting deposition testimony). An eyewitness confirmed Jok "[p]unched, smacked, [or] hit" another member of the group. *Id.* Officer Corrow, standing across the street at the time, saw the same thing. JA at 77-78, ¶¶ 33-36 (citing deposition testimony). Specifically, Officer Corrow watched as Jok threw "either an overhand or haymaker" punch, and Officer Corrow "heard [the punch] hit" the other individual's face. JA at 78, ¶ 36.

Video from Officer Corrow's body camera confirms what happened next. *See* JA at 180. The District Court's Opinion and Order, meanwhile, confirms the District Court's interpretation of "the video evidence" from Officer Corrow's body camera informed the District Court's decision in this matter. *See* JA at 1089 (explaining District Court's conclusions were based on review of body camera footage). Having reviewed the footage from Officer Corrow's body camera, then, the District Court had the following undisputed facts before it. *See id.*

As Officer Corrow approached Jok – having just watched Jok punch another individual in the face – Officer Corrow placed his hands on Jok and attempted to turn Jok around to place him in handcuffs. *See* JA at 180. In response, Jok began to raise his arms, clench his fists, and assume the bladed stance characteristic of a fighter. *See id.* Officer Corrow recognized Jok's actions as pre-fight or pre-assaultive cues. JA at 81, ¶ 48 (quoting deposition testimony). Given the risk that

Jok would assault him if he continued attempting to handcuff Jok, Officer Corrow used a modified arm bar technique to take Jok to the ground, as reflected in the video from Officer Corrow's body camera. *See* JA at 180. When Officer Corrow took Jok to the ground, Jok's head struck the sidewalk, briefly knocking Jok unconscious and lacerating Jok's face. JA at 82, ¶ 51(citing deposition testimony).

Officer Corrow's use of force against Jok was investigated by the Burlington Police Department after the incident. *See* JA at 85-86. The Burlington Police Department determined Officer Corrow's use of force against Jok was lawful and proper. *See id.* Jok subsequently filed suit against the City of Burlington, alleging Officer Corrow's use of force was excessive and in violation of Jok's Fourth Amendment right to be free from unreasonable seizure. *See* JA at 12-27.

The District Court concluded Officer Corrow is not entitled to qualified immunity for his use of force against Jok. *See* JA at 1107. The District Court felt that Jok was "not violent, resisting, or posing a threat to officers or the public," such that existing precedent made clear to Officer Corrow that his use of force against Jok would violate clearly established law. *Id.* As the evidence in the record demonstrates Jok <u>was</u> violent, <u>was</u> posing a threat to Officer Corrow, and <u>was</u> posing a threat to the public, however, Defendant-Appellee Officer Corrow respectfully submits the District Court's denial of qualified immunity to Officer Corrow was error.

## V. **Summary of the Argument**

The District Court erred in concluding Defendant-Appellant Officer Joseph Corrow ("Officer Corrow") is not entitled to qualified immunity. The District Court should have granted Officer Corrow's Motion for Summary Judgment based on qualified immunity. This Court should reverse the District Court's denial of Officer Corrow's Motion for Summary Judgment, for two reasons.

First, the District Court erred in determining a reasonable juror could conclude Officer Corrow's conduct violated Plaintiff-Appellee, Mabior Jok's, Fourth Amendment rights. Officer Corrow's use of force to prevent Plaintiff-Appellee, Mabior Jok ("Jok"), from committing further violence after Jok punched an individual in the face and signaled an intent to assault Officer Corrow did not violate Jok's Fourth Amendment rights. Officer Corrow's use of force was reasonable and necessary to prevent further violence. The District Court erred in concluding to the contrary.

Second, the District Court erred in concluding Officer Corrow's conduct violated a clearly established right of Jok's of which a reasonable police officer would have known. The District Court failed to specifically identify the supposedly clearly established right at issue and failed to identify the rule or precedent that made clear to Officer Corrow that his use of force – in the circumstances he confronted in the early morning hours of September 8 – would

7

violate Jok's rights.  Given the absence of a rule or precedent making clear to Officer Corrow that his use of force against Jok would violate Jok's Fourth Amendment rights, Officer Corrow is entitled to qualified immunity.  The District Court erred in concluding to the contrary and in denying Officer Corrow's Motion for Summary Judgment.

## VI.    <u>Argument</u>

### a. <u>Appellant's Contentions and Reasons for Contentions</u>

Defendant-Appellant Officer Corrow is entitled to summary judgment on Jok's excessive force claim because Officer Corrow is protected by qualified immunity.  Qualified immunity shields a police officer from claims for damages pursuant to § 1983 unless the officer's actions "violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).  As such, the doctrine protects an officer "from the sometimes hazy border between excessive and acceptable force . . . ." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).  "When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (internal quotation marks in original) (citation omitted).

8

1.  *The District Court Erred In Determining Officer Corrow Violated Jok's Fourth Amendment Rights*

The Supreme Court has explained that in determining the reasonableness of an officer's use of force, a court must acknowledge the reality police officers face:

> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Graham* approvingly). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (internal quotation marks in original). Reasonableness is to be assessed "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." *Mickle v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002); *see also Brayshaw v. City of Burlington*, No. 5:13-CV-253, 2015 WL 1523019, at *8 (D. Vt. Apr. 3, 2015).

As the District Court has previously acknowledged, there is "no requirement that an officer use the least amount of force necessary" in a given situation. *Bettis v. Bean*, No. 5:14-CV-113, 2015 WL 5725625, at *11 (D. Vt. Sept. 29, 2015). Determining whether an officer's use of force was reasonable "requires careful attention to the facts and circumstances of each particular case, including the

9

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *Tracy*, 623 F.3d at 96 (citing *Graham* factors as controlling inquiry).

Here, the District Court erred in concluding Officer Corrow violated Jok's Fourth Amendment rights. First, as the District Court intimated, there is no genuine dispute of material fact that a reasonable police offer in Officer Corrow's position on September 8, 2018 would have believed Jok punched another individual in the face. *See* JA at 1099 ("[E]ven if the Court accepts that Officer Corrow suspected that Jok had hit someone . . . ."). Indeed, at least two individuals – an eyewitness and Officer Corrow himself – testified they saw Jok punch another individual in the face. JA at 77-78, ¶¶ 32-36. A simple assault of this nature, while a misdemeanor, is still a serious and violent crime. *See* JA at 1099 (recognizing simple assault as misdemeanor under Vermont law). As such, Officer Corrow witnessed Jok commit a violent crime, and the first *Graham* factor weighs in favor of granting summary judgment.

Second, Jok posed a risk to Officer Corrow and to the public. The District Court's assertion that "there are genuine issues of material fact in dispute as to the risk posed by Jok to either the police or the public" is inconsistent with the facts in the record. JA at 1101. As the District Court itself recognized only one page

earlier in its Opinion and Order, precedent supports that disorderly conduct in a crowd can pose a threat to officers and public safety. *See id.* at 1100 (citing multiple cases). The District Court's focus on the fact "no verbal command was given" in this matter to distinguish this situation from that precedent is misplaced. *Id.* at 1101.

Jok punched an individual in an angry crowd outside a bar in the early morning hours. *See* JA at 77-78, ¶¶ 32-36. As can be seen in the footage from Officer Corrow's body camera, there was limited time for Officer Corrow to address the situation, as Jok remained engaged with the group. *See* JA at 180. Given the recognized risk that disorderly conduct in a crowd creates, Jok posed a danger to both Officer Corrow and public safety. *See* JA at 1100 (citing cases discussing risk posed by disorderly conduct in crowd). Jok posed an additional risk to Officer Corrow when Jok resisted Officer Corrow's efforts to arrest him, as discussed below. In sum, given the threat to the public's safety and Officer Corrow's safety posed by Jok, the second *Graham* factor favors summary judgment.

Third, Jok resisted Officer Corrow's attempt to arrest him. *See* JA at 180. There is no genuine dispute of material fact, based on the footage from Officer Corrow's body camera, that Officer Corrow placed his hands on Jok and attempted to turn Jok around to place him in handcuffs. *See id.* In response, Jok began to

11

raise his arms, clench his fists, and assume the bladed stance characteristic of a fighter. *See id.* Officer Corrow recognized Jok's actions as pre-fight or pre-assaultive cues. JA at 81, ¶ 48 (quoting deposition testimony).

The District Court's suggestion that Jok could not resist arrest because "he had not been placed under arrest of given a verbal command" is misplaced. JA at 1101. Jok had not been placed under arrest because as soon as Officer Corrow attempted to arrest and handcuff Jok, Jok resisted and signaled an intention to fight Officer Corrow, as reflected in the footage from Officer Corrow's body camera. *See* JA at 180. It was Jok resisting arrest and signaling that he was preparing to assault Officer Corrow that required Officer Corrow to use force against Jok. *See id.* With Jok resisting Officer Corrow's attempt to arrest him and signaling an intention to assault Officer Corrow, the third *Graham* factor favors summary judgment as well.

Ultimately, then, all three *Graham* factors suggest Officer Corrow's use of force did not violate Jok's Fourth Amendment right to be free from unreasonable seizure. In concluding to the contrary and finding Officer Corrow's use of force violated Jok's Fourth Amendment right, the District Court noted, repeatedly, "Officer Corrow used force without first issuing a verbal warning." JA at 1102; *see also id.* at 1101 ("[Jok] had not been . . . given a verbal command."); *id.* at 1103 ("There was no gradual progression of force."). As the District Court itself

has previously acknowledged, however, there is "no requirement that an officer use the least amount of force necessary." *Bettis*, No. 5:14-CV-113, 2015 WL 5725625, at *11 (citing *Bryan v. MacPherson*, 630 F.3d 805, 818 (9th Cir.2010)).

In keying on the fact Officer Corrow did not issue a verbal warning to Jok, the District Court – from the calm remove of almost four years after the incident – ignored that Officer Corrow was forced to make a quick judgment about how to prevent Jok's actions from driving a crowd outside a bar in the early morning hours out of control. *Graham* specifically warns courts against losing sight of the fact a police officer like Officer Corrow is forced to "make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving . . . ." 490 U.S. at 397. When the District Court lost sight of the circumstances here – that Officer Corrow used force against Jok only after seeing Jok punch an individual in the face, after feeling Jok resist Officer Corrow's attempt to arrest him, and after watching Jok signal an intent to assault Officer Corrow – the District Court erred. In the end, there is no genuine dispute of material fact that Officer Corrow's use of force did not violate Jok's Fourth Amendment rights, and the first step of the analysis supports that Officer Corrow is entitled to qualified immunity.

### 2. The District Court Erred In Determining Officer Corrow Violated a 'Clearly Established' Constitutional Right

The District Court concluded Officer Corrow was not entitled to qualified immunity because "it is clearly established law that a reasonable officer would

13

know the type of force inflicted on Jok would violate his constitutional rights." JA at 1105. There are two flaws in the District Court's conclusion. First, the District Court struggled to even identify the supposedly 'clearly established law' that made clear to Officer Corrow that his use of force violated Jok's constitutional rights. Second, the case law cited by the District Court does not fit with the facts in the record in this matter.

To be clearly established, a right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citation omitted). "[Courts] do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). That is, "unless existing precedent 'squarely governs' the specific facts at issue[,]" a police officer is entitled to qualified immunity. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (citation omitted) (internal quotation marks in original).

Here, the District Court was unable to identify the specific way in which Officer Corrow supposedly violated Jok's right, choosing instead to broadly assert "the type of force inflicted on Jok violated his constitutional right." JA at 1105. Tellingly, the District Court cited precedent involving a handful of different circumstances, none of which match with the facts of this case, in support of its argument. *See id.* The District Court cited circumstances involving "an

14

unresisting detainee who poses no threat to officers or public safety," "a person who is complying with commands and not posing a risk to public safety," and "arm takedowns and other maneuvers to take a person to the ground . . . [used] without cause . . . ." *Id.* at 1105-06 (citations omitted). None of those cases, however, fit with the facts here. *See id.*

In the early morning hours of September 8, Jok was not an unresisting detainee who posed no threat to officers or public safety. On the contrary, as discussed above, Jok posed a risk both to Officer Corrow and to the general public. *See* § (VI)(a)(1), *supra*. In the early morning hours of September 8, Jok did not comply with commands. On the contrary, as discussed above, Jok resisted Officer Corrow's attempt to handcuff and arrest Jok and signaled to Officer Corrow that he intended to fight with him. *See id., supra*. Finally, in the early morning hours of September 8, there was cause for Officer Corrow to take Jok to the ground. Indeed, as discussed above, taking Jok to the ground was necessary for Officer Corrow to protect himself and to protect the general public. *See id.*, *supra*. As such, none of the precedent cited by the District Court would have made clear to Officer Corrow – in the circumstances Officer Corrow confronted in the early morning hours of September 8 – that Officer Corrow's use of force against Jok violated Jok's constitutional rights. In short, the precedent cited by the District

15

Court in support of its denial of qualified immunity involves different circumstances than those present here. *See* JA at 1106-07.

There does not appear to be Supreme Court or Second Circuit precedent addressing the constitutionality of an officer's use of an arm bar technique against an individual, like Jok in the early morning hours of September 8, who has punched an individual in the face, is resisting a police officer's attempt to handcuff him, and has demonstrated multiple pre-assaultive cues to the police officer. In the absence of "existing precedent [that] squarely governs the specific facts at issue," Officer Corrow is entitled to qualified immunity. *See Kiesla*, 138 S. Ct. at 1153. That is, since there was no established rule or case law making clear, beyond debate, that Officer Corrow using force against Jok in the circumstances that existed on September 8 was unconstitutional, Officer Corrow is entitled to qualified immunity. *See Ashcroft*, 563 U.S. at 741. The District Court's conclusion to the contrary was in error.

Reinforcing that the District Court's denial of qualified immunity to Officer Corrow was error is the District Court's acknowledgement that it relied on precedent involving "taking an arrestee to the ground who is not violent, resisting, or posing a threat to officers or the public" when there is no genuine dispute Jok was all those things. JA at 1107. As the footage from Officer Corrow's body camera confirms, Jok – after punching an individual in the face – resisted Officer

Corrow's attempt to arrest him and signaled additional violence towards Officer Corrow, in a way that created a threat to Officer Corrow and the general public. *See* JA at 180. As the evidence in the record demonstrates Jok <u>was</u> violent, <u>was</u> posing a threat to Officer Corrow, and <u>was</u> posing a threat to the public, the precedent cited by the District Court is inapposite, and the District Court's denial of qualified immunity to Officer Corrow was error.

      b. <u>Standard of Review for Each Issue</u>

The Second Circuit reviews "*de novo* a district court's denial of a summary judgment motion based on a defense of qualified immunity." *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) (citing *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir.2003)).

## VII.    <u>Conclusion</u>

The District Court erred in determining Officer Corrow is not entitled to qualified immunity and in denying Officer Corrow's Motion for Summary Judgment on that basis. Officer Corrow's conduct did not violate Jok's Fourth Amendment right to be free from unreasonable seizure. Further, even if Officer Corrow's conduct did violate Jok's Fourth Amendment right to be free from unreasonable seizure, a reasonable official in Officer Corrow's position in the early morning hours of September 8 would not have known using force against Jok would violate one of Jok's clearly established rights.

Accordingly, given that he is entitled to qualified immunity, Defendant-Appellant Officer Joseph Corrow respectfully request this Court reverse the District Court's Opinion and Order denying Officer Corrow's Motion for Summary Judgment on the basis of qualified immunity and remand this matter to the District Court for further proceedings consistent with that decision.

Date: September 30, 2022                          By:    */s/ Pietro J. Lynn*
                                                         Pietro J. Lynn, Esq.

## VIII.    <u>Certificate of Compliance</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

1. Exclusive of the exempted portions of the brief, as provided in Federal Rules of Appellate Procedure 32(a)(7)(B), the brief contains 4,386 words.

2. The brief has been prepared in proportionally spaced type facing using

Microsoft Word in 14 point Times New Roman font. As permitted by Federal Rule

of Appellate Procedure 32(a)(7)(B), the undersigned has relied upon the word

count feature of this word processing system in preparing this certificate.

Date:  September 30, 2022                    By:    */s/ Pietro J. Lynn*_____
                                                          Pietro J. Lynn, Esq.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

MABIOR JOK                )
                              )
         Plaintiff-Appellee,    )
                              )
v.                          )      Docket No. 22-413
                              )
CITY OF BURLINGTON, VERMONT, )
*et al.*,                        )
                              )
        Defendants-Appellants.   )

**CERTIFICATE OF SERVICE**

I certify that I have today delivered *FINAL FORM BRIEF FOR DEFENDANTS-APPELLANTS JOSEPH CORROW, CITY OF BURLINGTON, VERMONT and BRANDON DEL POZZO* as well as a copy of this certificate, to all other parties to this case as follows:

        ☐  By first class mail by depositing it in the U.S. mail;

        ☐  By personal delivery to _____ or his/her counsel;

        X  Other. Explain: ECF

The names and addresses of the parties/lawyers to whom the mail was addressed or personal delivery was made are as follows:

Robb Spensley, Esq.
Chadwick & Spensley, PLLC
136 High Street
Brattleboro, VT 05302
robb@chadwicklawvt.com

Dated at Burlington, Vermont this 30th day of September, 2022.

                        By:    */s/ Pietro J. Lynn*_____
                                 Pietro J. Lynn, Esq.
                                 Lynn, Lynn, Blackman & Manitsky, P.C.
                                 *Attorneys for Defendants-Appellants*
                                 76 St. Paul Street, Suite 400
                                 Burlington, VT 05402
                                 802-860-1500
                                 plynn@lynnlawvt.com